UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION | ) ) ) | Originating No. 1:21-cv-00751-DAE (W.D. Tex.) |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) ) | **[REDACTED]** MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ..............................................................................................3

    A.    Relevant Allegations in the Underlying Action....................................................3

    B.    Procedural History of the Underlying Action.......................................................4

    C.    The Subpoena and Quanterix's Response ...........................................................5

III.  LEGAL STANDARDS .....................................................................................9

IV.   ARGUMENT ..................................................................................................11

    A.    Quanterix Has Not, and Cannot, Carry Its Heavy Burden to Prove that the Withheld Documents Are Attorney-Client Privileged........................................11

        1.    The Documents Concern Quanterix's Public Relations Strategy, Rather than Legal Advice ........................................................................11

        2.    Quanterix Waived Any Attorney-Client Privilege through Disclosure to Third-Parties ........................................................................13

    B.    Quanterix Has Not, and Cannot, Carry Its Heavy Burden to Prove that the Withheld Documents Are Work Product Protected.............................................17

        1.    The Documents Were Generated for a PR Campaign.............................17

        2.    The Documents Were Not Created in Anticipation of Litigation ............18

    C.    If Further Scrutiny Is Necessary, a Limited *In Camera* Review is Appropriate ........................................................................................................20

V.    CONCLUSION ..............................................................................................20

4857-0324-8794.v9

# TABLE OF AUTHORITIES

**Page**

## CASES

*Burton v. R.J. Reynolds Tobacco Co.*,
   200 F.R.D. 661 (D. Kan. 2001).................................................................13

*Cavallaro v. United States*,
   284 F.3d 236 (1st Cir. 2002)....................................................................13

*Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*,
   2014 WL 7238354 (S.D.N.Y. Dec. 19, 2014) ...............................14, 16

*Church of Scientology Int'l v. United States Dep't of Just.*,
   30 F.3d 224 (1st Cir. 1994)......................................................................19

*F.D.I.C. v. Ogden Corp.*,
   202 F.3d 454 (1st Cir. 2000)....................................................................17

*Gabriel v. Superstation Media, Inc.*,
   2014 WL 12796266 (D. Mass. Sept. 5, 2014) ...........................................9

*Gattineri v. Wynn MA, LLC*,
   2021 WL 8649392 (D. Mass. Aug. 25, 2021) ..............................14, 15

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010),
   *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*,
   409 F. App'x 393 (2d Cir. 2010)..............................................................16

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   386 F. Supp. 3d 175 (D.P.R. 2019)..........................................................19

*In re Grand Jury Subpoena*,
   220 F.R.D. 130 (D. Mass. 2004)...............................................................19

*In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*,
   274 F.3d 563 (1st Cir. 2001).......................................................................9

*In Re Grand Jury Subpoenas Dated March 24, 2003*,
   265 F. Supp. 2d 321 (S.D.N.Y. 2003).................................................15, 16

*In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*,
   348 F.3d 16 (1st Cir. 2003).....................................................................9, 10

**Page**

*In re Prograf Antitrust Litig.*,
2013 WL 1868227 (D. Mass. May 3, 2013) ...................................................................13, 18

*In re Signet Jewelers Ltd. Sec. Litig.*,
332 F.R.D. 131, 136 (S.D.N.Y. 2019), *aff'd*,
2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019) ........................................................................12

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2021 WL 3140050 (D.N.J. July 22, 2021),
*objections overruled*, 2021 WL 4272654 (D.N.J. Sept. 21, 2021) ........................11, 12, 14, 18

*Lluberes v. Uncommon Prods., LLC*,
663 F.3d 6 (1st Cir. 2011) .....................................................................................................10

*Mullins v. Dep't of Lab. of P.R.*,
269 F.R.D. 172 (D.P.R. 2010) ...............................................................................................19

*Pearlstein v. BlackBerry Ltd.*,
2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) .................................................................15, 16

*Ravenell v. Avis Budget Grp., Inc.*,
2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012) ..........................................................................16

*Steinfeld v. IMS Health Inc.*,
2011 WL 6179505 (S.D.N.Y. Dec. 9, 2011) ..........................................................................16

*United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*,
475 F. Supp. 3d 45 (D. Mass. 2020) ............................................................................. *passim*

*United States v. Textron Inc. & Subsidiaries*,
577 F.3d 21 (1st Cir. 2009).....................................................................................3, 10, 17, 18

*Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*,
2022 WL 18028105 (D. Mass. May 17, 2022) ....................................................................9, 10

## STATUTES, RULES AND REGULATIONS

Local Rules 7.1 and 37.1.............................................................................................................1

Federal Rules of Civil Procedure
Rule 26(b)(1).........................................................................................................................9
Rule 37 ..................................................................................................................................1
Rule 45 .............................................................................................................................1, 9

4857-0324-8794.v9

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure, lead plaintiff Mohammad Bozorgi and additional plaintiffs Ken Calderone and Manohar Rao (collectively, "Plaintiffs") respectfully request an order compelling compliance with their document subpoena served on non-party Quanterix Corp. ("Quanterix" or the "Company").[1]

## I.    INTRODUCTION

This discovery dispute[2] concerns dozens of documents being withheld by Quanterix despite their centrality to a securities fraud case against Cassava Sciences, Inc. ("Cassava") and three of its executives (collectively, "Cassava Defendants"[3]) pending in the Western District of Texas.

Plaintiffs are putative representatives for a class of Cassava investors alleging that the Cassava Defendants misled the market about simufilam, an experimental Alzheimer's drug, by holding it out as a revolutionary treatment while concealing systematic data manipulation, significant anomalies, and intractable conflicts of interest that tainted Cassava's research. The allegations include, among other things, that Cassava manipulated Phase 2b clinical trial data presented at an Alzheimer's Association International Conference ("AAIC"). Prominent scientists have since exposed the Cassava Defendants' fraud, and multiple government entities have opened criminal and civil investigations, including the U.S.

---

[1]    Plaintiffs served the original subpoena on June 15, 2023, identifying the District of Delaware as the place for compliance. Pursuant to subsequent agreement of the parties, Plaintiffs served an identical subpoena on Quanterix's counsel on December 11, 2023, amended only to specify compliance is required in this District, where Quanterix is located. *See* Exhibit ("Ex.") A. All "Ex.__" references are to the Declaration of Kevin A. Lavelle in Support of Memorandum of Law in Support of Plaintiffs' Motion to Compel the Production of Documents, filed concurrently herewith ("Lavelle Decl.").

[2]    Pursuant to Local Rules 7.1 and 37.1, counsel for Plaintiffs met and conferred with counsel for Quanterix on July 27, 2023, and August 9, 2023, and attempted in good faith to resolve this issue, but were unable to do so. *See* Lavelle Decl.

[3]    The Cassava Defendants are Cassava, Cassava's Founder and CEO, Remi Barbier; Senior VP of Neuroscience and Barbier's wife, Lindsay Burns; and CFO, Eric Schoen.

4857-0324-8794.v9

Department of Justice ("DOJ") and U.S. Securities & Exchange Commission ("SEC").  Scientific journals have also retracted underlying research papers related to simufilam authored by defendant Burns and Cassava's scientific collaborator, Hoau-Yan Wang.

Cassava's knee-jerk reaction to the unraveling of their scheme was to launch a counter-attack and deflect to others, including non-party Quanterix.  On August 25, 2021, the morning after serious allegations of scientific misconduct emerged by way of a "Citizen Petition" filed with the FDA, Cassava issued a public statement denying wrongdoing and calling the allegations "fiction."  ¶¶14, 316-317.[4] Chief among these "fictions," Cassava claimed, was that: "Biomarker data is generated by Cassava Sciences or its science collaborators and therefore are falsified."  ¶317.  Instead, according to Cassava, the "fact" was that the Cassava's Phase 2b plasma p-tau data alleged to have been manipulated "was generated *by [Quanterix]*, an independent company, and presented at the recent Alzheimer's Association International Conference[]."[5]  *Id.* (alterations in original).

But, as Plaintiffs allege, Cassava's statements were false and misleading.  Quanterix did *not* prepare the AAIC data or charts alleged to have been manipulated.  Two days later, on August 27, 2021, Quanterix issued its own press release clarifying that Quanterix "did *not* interpret the test results *or* prepare the data charts presented by Cassava" in the AAIC presentation.  ¶¶16, 323.  Following Quanterix's statement, Cassava's share price dropped significantly.  ¶¶17, 499.

The documents in dispute are communications and related documents from a short window of time surrounding August 26 and 27, 2021 that concern Cassava's public statements and Quanterix's response.  While Quanterix produced a number of documents in response to the

---

[4]    All "¶__" and "¶¶__" references are to Plaintiffs' Consolidated Complaint for Violations of the Federal Securities Laws, filed in the underlying action on August 18, 2022 ("Complaint").  *See* Ex. B.

[5]    Unless otherwise noted, emphasis is added and internal citations are omitted throughout.

subpoena (most of which had already been ███████████████████████████████

████), it continues to improperly withhold 68 documents in whole or part based on the attorney-

client privilege and/or work-product doctrine.  As explained below, however, the documents are

not privileged because they concern Public Relations ("PR") strategy, rather than legal advice, and

were *all* disclosed to third-party PR consultants.  Nor are the documents protected work product.

The documents consist of materials prepared in the ordinary course of business and intended for

public disclosure, not trial preparation.  *See United States v. Textron Inc. & Subsidiaries*, 577 F.3d

21, 29-30 (1st Cir. 2009) ("Materials assembled in the ordinary course of business . . . or for other

nonlitigation purposes" are not protected work product.).  And the documents either pre-date any

event that could have reasonably caused anticipated litigation or they are otherwise unrelated to

litigation.

Accordingly, Plaintiffs respectfully request that the Court issue an order compelling

Quanterix to produce the 68 withheld documents, or at a minimum, provide them to the Court for

*in camera* review.

## II.      BACKGROUND

### A.      Relevant Allegations in the Underlying Action

Plaintiffs allege that the Cassava Defendants misled the market concerning Cassava's

primary drug candidate, simufilam, thereby inflating Cassava's stock price during the putative

class period.  Among other allegations, Plaintiffs claim the Cassava Defendants concealed that the

research justifying simufilam's commercial development was marred by extensive data

manipulation, significant anomalies, and undisclosed conflicts of interest.  ¶¶1-44.

The Cassava Defendants' scheme began to unravel, however, when on August 24, 2021, a

"Citizen Petition" filed with the FDA became public, revealing "grave concerns about the quality

and integrity of the laboratory-based studies surrounding" simufilam. ¶¶12-13. These revelations included that Cassava had purposefully removed data points from a July 2021 AAIC presentation in order to make the results appear far more significant than they actually were. ¶¶218-222. Following the release of the Citizen Petition, numerous government agencies, including the SEC, Department of Health and Human Services, and DOJ also opened civil and criminal investigations into Cassava. ¶¶28, 44.

Cassava, however, continued to obfuscate the truth, issuing a press release on August 25, 2021, labeling various statements from the Citizen Petition as "fiction" before setting out the purported "facts," according to Cassava. ¶¶14, 316-317. In particular, regarding the AAIC presentation, Cassava stated that its "plasma p-tau data from Alzheimer's patients was generated by [Quanterix], an independent company, and presented at the recent Alzheimer's Association International Conference[]." ¶¶316-317 (alterations in original). But contrary to the Cassava Defendants' claims, Quanterix had no hand in Cassava's doctored AAIC presentation or the data contained therein. What Cassava claimed as fiction was actually fact – and vice versa.

Two days later, on August 27, Quanterix issued its own press release clarifying that, while it did generate the raw data, Quanterix "did ***not*** interpret the test results ***or*** prepare the data charts presented by Cassava" in the AAIC presentation. ¶¶323-324. On this news, Cassava's share price fell 17.66%, on unusually heavy trading volume. ¶¶17, 499.

### B. Procedural History of the Underlying Action

The Complaint was filed on August 18, 2022. On May 11, 2023, the district court denied the Cassava Defendants' motion to dismiss Plaintiffs' claims, upholding, among other allegations, those regarding the Cassava Defendants' false and misleading August 25, 2021 press release

concerning Quanterix's role in the AAIC presentation.  Ex. C at 8, 18.  Discovery is ongoing in the underlying action, and Plaintiffs plan to start taking fact depositions in Spring 2024.

### C.      The Subpoena and Quanterix's Response

On June 15, 2023, Plaintiffs served Quanterix with a document subpoena.  *See* Ex. D.[6]  The subpoena sought documents relevant to the underlying action, including:  documents related to Quanterix's August 27 press release, AAIC poster and the scientific results discussed therein. Ex. A, Request Nos. 3-5.

After providing responses and objections, Quanterix produced 836 documents on July 11, 2023, and July 20, 2023, the overwhelming majority of which had been previously ███████ ████████████████████████.  Quanterix also provided a privilege log identifying 128 responsive documents for a short window of time surrounding the date of Quanterix's August 27, 2021 press release (between August 26 and September 4, 2021) related to Cassava.

Plaintiffs then engaged in a thorough meet and confer process to evaluate Quanterix's privilege and work-product assertions, including meet and confers on July 27 and August 9, 2023. *See* Ex. E; Lavelle Decl., ¶¶2-3.  After Plaintiffs' counsel questioned a number of entries on Quanterix's privilege log during the July 27, 2023 meet and confer, on July 28, 2023, Quanterix produced eight (8) documents it had previously withheld or redacted and a revised privilege log. Lavelle Decl., ¶3.  These documents were plainly not privileged and included: (i) communications between PR firm PAN Communications (or "Pan Comm") and a *Being Patient* reporter and Craig Drill Capital stock analyst (Ex. G; Ex. H); (ii) meeting invitations (Ex. I; Ex. J ); and (iii) redacted business-related communications with no attorney included (Ex. K ).  The fact that Quanterix

---

[6]      Quanterix does not object to this motion being brought in the United States District Court for the District of Massachusetts, where the company is headquartered.

initially withheld these documents added to Plaintiffs' concerns that additional documents were still being improperly withheld and/or redacted.

During the August 9, 2023 meet and confer, Plaintiffs learned additional information concerning Quanterix's privilege assertions regarding withheld documents disclosed to third-party PR specialists.  Lavelle Decl., ¶3. ███████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

---

[7] ████████████████████████████████████████████
████████████████████████████████████████████████

4857-0324-8794.v9



4857-0324-8794.v9



None of these documents included the provision of, or a request for, legal advice or attorney work-product related to litigation.

Similarly, the emails that Quanterix produced with redactions do not appear privileged or work-product protected. These documents include, for example:



Quanterix updated its privilege log with its September 21, 2023 production, which now contains 70 documents withheld or redacted on the basis of attorney-client privilege and/or work product protection. Ex. V. The first 68 of 70 entries on the log are at issue in this motion.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Therefore, Plaintiffs are forced to bring this motion to compel to obtain an order compelling the production of the remaining 68 documents that Quanterix continues to improperly withhold.

## III.    LEGAL STANDARDS

The Federal Rules of Civil Procedure are broad and permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Where a non-party possesses potentially relevant information, the party seeking discovery may obtain a subpoena for the evidence pursuant to Rule 45." *Gabriel v. Superstation Media, Inc.*, 2014 WL 12796266, at *2 (D. Mass. Sept. 5, 2014).

"'Because it stands in the way of [the] right to every man's evidence, the privilege applies only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client.'" *Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, 2022 WL 18028105, at *2 (D. Mass. May 17, 2022) (alteration in original) (quoting *In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 571 (1st Cir. 2001)). The "[o]ne claiming privilege, 'bears the burden of establishing that . . . [the privilege] applies . . . and that it has not been waived.'" *Id.* (ellipses and second alteration in original) (quoting *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003)). "'In discharging its burden, the proponent [of an asserted privilege] must adduce competent evidence in support of its claims.'" *Id.* at *3 (alteration in original).

It is well established that the attorney-client privilege "protects 'only those communications that are confidential and are made for the purpose of seeking or receiving legal

- 9 -

advice.'" *United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 63 (D. Mass. 2020) (quoting *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011)). Importantly, "when otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." *Grand Jury Subpoena Addressed to XYZ Corp.*, 348 F.3d at 22.

Similarly, "[t]he First Circuit has taken a narrow view of the attorney work product doctrine." *Wollman*, 475 F. Supp. 3d at 61. Work-product protection only applies to "'materials prepared ***for use in litigation***,'" meaning that they must not be "'prepared for some purpose other than litigation.'" *Id.* (quoting *Textron*, 577 F.3d at 29). Work product protection is not triggered simply because "the subject matter of a document relates to a subject that might conceivably be litigated." *Textron*, 577 F.3d at 29 (emphasis in original). Thus, materials prepared "in the ordinary course of business" or for "other nonlitigation purposes are ***not***" protected by work product protection ***even if*** the "materials were prepared by lawyers or represent legal thinking." *Id.* at 29-30.

Quanterix "bears the burden of proving not only that the attorney-client privilege and/or work product doctrines apply to the documents listed in the privilege log but also that any privilege has not been waived." *Woods Hole Oceanographic Inst.*, 2022 WL 18028105, at *3. "'Where the proponent fails to adduce sufficient facts to permit the court to conclude with ***reasonable certainty*** that the privilege applies, its burden is not met.'" *Id.*

4857-0324-8794.v9

## IV.   ARGUMENT

### A.   Quanterix Has Not, and Cannot, Carry Its Heavy Burden to Prove that the Withheld Documents Are Attorney-Client Privileged

#### 1.   The Documents Concern Quanterix's Public Relations Strategy, Rather than Legal Advice

First, Quanterix has not, and cannot, carry its burden to prove that the 46 documents withheld on its privilege log are attorney-client privileged. *See* Ex. V. The attorney-client privilege only protects communications ""made for the purpose of seeking or receiving legal advice."" *Wollman*, 475 F. Supp. 3d at 63.

In contrast, the communications here concern a communications strategy, not legal advice, and are thus not privileged. *See* §II.C., *supra.* This is plain from the unredacted portions of the documents at issue, as well as documents previously, and improperly, withheld as privileged. ▮



▮ Accordingly, "the limited descriptions in the log file and the redacted portions of the materials produced merely demonstrate the provision of public relations services and no more." *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *13 (D.N.J. July 22, 2021), *objections*

---

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮

4857-0324-8794.v9

*overruled*, 2021 WL 4272654 (D.N.J. Sept. 21, 2021) (privilege did not apply or was waived for PR firm communications reflecting ordinary PR services such as "'how to respond to media inquiries, updates on relevant media coverage, preparing testimony before Congress'" and providing "advice on how to 'spin' circumstances in the manner most favorable to Valeant").

The nonprivileged nature of these documents is not altered by the fact that attorneys may have been included on certain communications.  For example, in *In re Signet Jewelers Ltd. Sec. Litig.*, the court compelled the production of emails between a PR firm (Ogilvy) and the defendant Signet, which copied in-house counsel, because they "concern[ed] how to respond to a media inquiry from NPR," rather than "communications that were sent for the purpose of obtaining or providing legal advice."   332 F.R.D. 131, 136 (S.D.N.Y. 2019), *aff'd*, 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019).  Here, too, the documents concern a media strategy, not legal advice.

Further, the fact that some of the PR Consultants were retained by Quanterix's in-house counsel does not render their communications privileged.  *See, e.g.*, *id.* at 133, 136; *Valeant*, 2021 WL 3140050, at *11 (communications with PR firm retained by outside law firm were ***not*** privileged even though the retention letter explicitly mentioned "assisting" legal counsel "'with expert public relations services and advice' so as to provide 'more informed and valuable legal advice' as to the 'legal issues' presented by this litigation").

In *Valeant*, for example, the court did not find the communications between a PR consultant and outside counsel privileged even where the engagement letter expressly said the communications were "'made solely for the purpose of assisting Covington in providing legal advice to Valeant'"; instead, the court looked past the language of the agreement and determined that the actual "services consisted of general public relations assistance."  2021 WL 3140050, at *2, *11, *13-*14.  Here, Quanterix's claim is even more attenuated as there is no such language

in the retainers that suggests the PR Consultants had any role in providing legal advice to the company, and in Ms. Creighton's case, her NDA specifically stated its purpose was "business discussions."  Ex. E at 2.

Finally, even if an attorney drafted some of the documents, they remain non-privileged because they were for a PR exercise.  *See, e.g.*, *Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 669 (D. Kan. 2001) (Documents prepared by attorneys for PR purposes are not privileged because "while these documents were all written or prepared by RJR attorneys (either inside or outside counsel), the documents make no reference to legal issues or the rendering of legal advice.").  For all these reasons, the attorney-client privilege did not attach to these documents.

### 2.    Quanterix Waived Any Attorney-Client Privilege through Disclosure to Third-Parties

Further, even if the privilege theoretically attached at some point in time, any such privilege has been waived by disclosure to third parties.  It has long been held that "[g]enerally, disclosing attorney-client communications to a third party undermines the privilege."  *Cavallaro v. United States*, 284 F.3d 236, 246-47 (1st Cir. 2002).  Here, each of the 46 documents Quanterix withheld on the basis of attorney-client privilege have been disclosed to one or more third-party PR Consultant; thus, any privilege has been waived.  *See* Ex. V.

Quanterix may nevertheless argue that the disclosure was not waived because the third parties were consultants.  But courts have repeatedly held otherwise in the context of PR firms.  *See, e.g.*, *Signet Jewelers*, 332 F.R.D. at 137 ("The presence of these third parties [PR firms] on the communications acts as a waiver of the privilege."); *Wollman*, 475 F. Supp. 3d at 66 (same); *see also In re Prograf Antitrust Litig.*, 2013 WL 1868227, at *2 (D. Mass. May 3, 2013) ("[T]o the extent that any drafts of the petition were shared with outside parties, such as public relations

firms, the privilege is deemed waived with respect to those particular drafts."); *also Valeant*, 2021 WL 3140050, at *11, *13-*14 (finding no privilege applied).

Moreover, to overcome waiver, Quanterix would have to prove that, not only the PR Consultants were "'necessary, or at least highly useful,'" to its lawyer's provision of legal advice **but also** that the communication itself "'must be made "for the purpose of obtaining legal advice from the lawyer."'" *Wollman*, 475 F. Supp. 3d at 66. "The fact that 'an attorney's ability to represent a client is merely improved by the assistance of the third party' is ***not enough*** to avoid the waiver of the privilege." *Id*.

As shown above, the purpose of the communications here were for PR strategy, not legal advice, and the PR Consultants were not "essential to transmit communications between an attorney and a client (such as an interpreter or an accountant)." *Valeant*, 2021 WL 3140050, at *8. *See Wollman*, 475 F. Supp. 3d at 67 (rejecting application of "translator" function in PR context). Indeed, "courts have generally rejected application of the 'translator' exception in the context of outside marketing firms." *Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 2014 WL 7238354, at *2 (S.D.N.Y. Dec. 19, 2014). As courts have aptly observed, providing "'[g]eneral business advice . . . is a paradigmatic example of what will ***not*** be protected . . . because it rarely, if ever, presents complex matters that are beyond the reach of an attorney and warrant the involvement of a third party.'" *Gattineri v. Wynn MA, LLC*, 2021 WL 8649392, at *2 (D. Mass. Aug. 25, 2021). In such situations, "the communication of privileged information to the PR firm waives the attorney-client privilege." *Wollman*, 475 F. Supp. 3d at 67; *see also Signet Jewelers*, 332 F.R.D. at 137 ("The presence of these third parties [PR firms] on the communications acts as a waiver of the privilege.").

The inexorable conclusion that waiver occurred is bolstered by the fact that nowhere in the PR Consultants' retention agreements or NDAs was any mention of providing or assisting with legal advice. *See* §II.C., *supra*. This is also consistent with what is known about the documents, as sampled above. *See* IV.A.1., *supra*. The bottom-line is that Quanterix has provided nothing to suggest that the PR Consultants, individually or collectively, were indispensable to their legal advice and thus disclosure to these third parties waived any privilege. *See Gattineri*, 2021 WL 8649392, at *2 (finding waiver of attorney-client privilege where proponent of privilege failed to "present[] any argument or evidence to suggest that [third-party business consultant] was indispensable or served a specialized role in communicating with them or [outside counsel]"). As in *Signet Jewelers*, "[t]he PR firms here were not called upon to perform a specific litigation task that the attorneys needed to accomplish in order to advance their litigation goals. Rather, the PR firms were involved in [PR] activities aimed at burnishing [Quanterix's] image." 332 F.R.D. at 136.

Quanterix may rely on *In Re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321 (S.D.N.Y. 2003) to suggest that a waiver has not occurred, but reliance on that case would be misplaced. *In Re Grand Jury Subpoenas* involved a public relations firm hired to serve a unique and narrow ***legal*** goal that is not present here – to help a client then under a high profile criminal investigation avoid indictment. Here Quanterix has not identified any specific legal strategy that required the PR Consultants involvement, nor were the PR Consultants retained to respond to a high profile criminal investigation. *See* Ex. E at 1 (PR Consultants retained to respond to Cassava press release). Further, as courts have found, *In Re Grand Jury Subpoenas* is narrowly construed and limited to the facts of that case. *See Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *6 (S.D.N.Y. Mar. 19, 2019) ("*In re Grand Jury Subpoenas Dated March 24, 2003* is narrowly

construed.") (collecting cases); *id.* ("'The reach of [*In re Grand Jury Subpoenas Dated March 24, 2003* is] limited by its context . . . .'") (alteration in original) (quoting *Ravenell v. Avis Budget Grp., Inc.*, 2012 WL 1150450, at *3 (E.D.N.Y. Apr. 5, 2012)); *id.* ("interpreting *In re Grand Jury Subpoenas Dated March 24, 2003* as having a 'very narrow holding' and applicable only in 'cases such as . . . high profile grand jury investigation[s]'") (quoting *In re Chevron Corp.*, 749 F. Supp. 2d 170, 184 n.64 (S.D.N.Y. 2010), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010)). "[W]hen a public relations consultant has performed nothing other than standard public relations services, the normal rule applies and disclosure of privileged communications to the consultant will result in a waiver." *BlackBerry*, 2019 WL 1259382, at *6. *See Signet Jewelers*, 332 F.R.D. at 136 ("The Court finds that Judge Kaplan's [*In re Grand Jury Subpoenas]* decision is not applicable to the facts here.").

And beyond finding the presence of PR firms on communications with counsel "act[ed] as a waiver of the privilege," the court in *Signet Jewelers* added, "[n]or does it present a situation where the PR firm employees included in the communications were . . . 'the functional equivalent' of a Signet employee." *Id.* at 137. Here, Quanterix has not argued that any of the PR Consultants, let alone all of them, were the functional equivalent of in-house Quanterix employees. Nor has this doctrine "been adopted by the First Circuit or applied in the District of Massachusetts." *Wollman*, 475 F. Supp. 3d at 68. In any event, the PR Consultants "do[] not meet the criteria . . . to be considered the 'functional equivalent' of a[] [Quanterix] employee," as they were "hired for specific projects, w[ere] consultant[s] to and not . . . agent[s] of [Quanterix], worked out of [their] own offices, and worked for clients other than [Quanterix]." *Id. See also Church & Dwight Co.*, 2014 WL 7238354 at *3 (marketing firm hired to assist with launch of product not the functional equivalent of an employee); *Steinfeld v. IMS Health Inc.*, 2011 WL 6179505, at *1-4 (S.D.N.Y.

- 16 -

Dec. 9, 2011) (outside consultant retained to advise a corporation about executive compensation and benefits plans was not functional employee).

In sum, nothing in the record suggests the many PR Consultants' services were essential to Quanterix's or its outside counsel's provision of legal advice to the company.  Neither Quanterix nor the Company's outside attorneys at Mintz Levin required any of the PR Consultants to "translate" information that the lawyers could not otherwise understand.  Any privilege that may have existed has, thus, been waived.

### B.     Quanterix Has Not, and Cannot, Carry Its Heavy Burden to Prove that the Withheld Documents Are Work Product Protected

#### 1.     The Documents Were Generated for a PR Campaign

Quanterix also improperly asserts work product protection over 29 documents disclosed to the PR Consultants on the basis that there was an immediate "anticipation of litigation."  Ex. E at 4.  This explanation is insufficient to carry Quanterix's burden to demonstrate that the narrowly applied work product doctrine applies.  *See Wollman*, 475 F. Supp. 3d at 61 ("The First Circuit has taken a narrow view of the attorney work product doctrine . . . ."); *see also F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000)("[T]he burden to establish an applicable privilege rests with the party resisting discovery.").

Courts have recognized that "the focus of work product protection has been on materials prepared for **use in litigation**," whether underway or anticipated.  *Textron*, 577 F.3d at 29.  This means that materials "prepared for some purpose other than litigation" do not qualify for work product protection.  *Id.*  "It is not enough to trigger work product protection that the subject matter of a document relates to a subject that **might** conceivably be litigated."  *Wollman*, 475 F. Supp. 3d at 61.  None of the documents at issue here was prepared in anticipation of or for use in litigation.

- 17 -

First, as explained above, Quanterix created the withheld documents in the ordinary course of its business for the purpose of generating a PR strategy for its August 27, 2021 press release; ***none*** of the documents was created for ***use*** in litigation or even relate to litigation on their face.

██████████████████████████████████████████████████████████████

████████████████████████████████  Such "'[m]aterials assembled in the ordinary course of business . . . or for other nonlitigation purposes are not under the qualified immunity provided by'" the work product doctrine, and it is ***not enough*** that "the materials were prepared by lawyers or represent legal thinking." *Textron*, 577 F.3d at 29-30 (alteration in original). *See Valeant*, 2021 WL 3140050, at *8 (conducting media campaign with PR consultant is not a litigation strategy).

Even if the PR Consultants "provided public relations advice or documents bearing upon potential litigation over the citizen petition," which they did not, "such materials fall ***outside the scope*** of work-product protection, which is intended 'to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally.'" *Prograf*, 2013 WL 1868227, at *3; *see Wollman*, 475 F. Supp. 3d at 62 (investigative report created by outside counsel was not prepared for "***use*** in possible litigation" and thus not work product) (emphasis in original).

### 2. The Documents Were Not Created in Anticipation of Litigation

Second, Quanterix is unable to prove that their purported subjective belief that the documents were prepared in anticipation of litigation was "'objectively reasonable.'" *Id.* at 61-62. The materials sought were not created in "anticipation of" any litigation, ████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████ *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 386 F. Supp. 3d 175, 187 (D.P.R. 2019) (holding that an expectation of litigation is insufficient grounds to establish work product protection); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 157 (D. Mass. 2004) ("[A]n **anticipated** [government agency] investigation **would not count**" for purposes of determining if materials were created in anticipation of litigation.).

Accordingly, any document pre-dating Quanterix's █████████████████████████ ██████, could not have been created in anticipation of litigation.  *See* §II.C., *supra.*  And even after that date, any withheld document that pertains, in whole or in part, to Quanterix's then ***pre-existing*** media strategy and decision to issue the August 27 press release – ████████████ ████████████ – were not created in anticipation of litigation.  *See Mullins v. Dep't of Lab. of P.R.*, 269 F.R.D. 172, 176 (D.P.R. 2010) (requiring party to "'explain why the work product privilege applies to **all portions** of the document'") (quoting *Church of Scientology Int'l v. United States Dep't of Just.*, 30 F.3d 224, 237 (1st Cir. 1994)). ████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████

    █████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ Thus, any anticipated litigation based on this email is highly speculative and unsubstantiated. ████

██████████████████████████████████████████████

████████████████████████████████

The work product protection, therefore, does not apply for two independent reasons: (i) the documents at issue were not created for use in litigation; and (ii) Quanterix had no reasonable anticipation of litigation at the time the materials were created or the documents do not relate to any litigation matter.  The documents must be produced.

### C.   If Further Scrutiny Is Necessary, a Limited *In Camera* Review is Appropriate

While Plaintiffs submit that the record strongly supports an order compelling Quanterix to produce documents over its privilege and work product claims, in the event that the Court believes additional scrutiny is necessary, *in camera* review of a representative sample of the documents would be appropriate.  Accordingly, to the extent (if at all) the Court determines additional information is necessary to resolve this Motion, Plaintiffs respectfully request *in camera* review of the following communications: Privilege Log Entry Nos. ML_REV_Quanterix-0000001331; ML_REV_Quanterix-0000001316;   ML_REV_Quanterix-0000001314;   ML_REV_Quanterix-0000001313;   ML_REV_Quanterix-0000001334;   ML_REV_Quanterix-0000001310; ML_REV_Quanterix-0000001327;   ML_REV_Quanterix-0000001332;   ML_REV_Quanterix-0000001305;   ML_REV_Quanterix-0000001296;   ML_REV_Quanterix-0000001320;   and Quanterix_Cassava_Sec_Litig_0003254, along with any withheld attachments.  *See* Ex. V.

### V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and compel production of the 68 improperly withheld and redacted documents within seven days of any order, or, in the alternative, conduct an *in camera* review of a selected subset of the documents at issue.

4857-0324-8794.v9

DATED: February 1, 2024                    Respectfully submitted,

                                           HUTCHINGS BARSAMIAN
                                             MANDELCORN, LLP
                                           THEODORE M. HESS-MAHAN (BBO #557109)

                                           _s/ Theodore M. Hess-Mahan_
                                           THEODORE M. HESS-MAHAN

                                           110 Cedar Street, Suite 250
                                           Wellesley Hills, MA 02481
                                           Telephone: 781/431-2231
                                           thess-mahan@hutchingsbarsamian.com

                                           Local Counsel for Lead Plaintiff and Additional
                                           Plaintiff Ken Calderone

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           DANIEL S. DROSMAN
                                           RACHEL JENSEN
                                           KEVIN A. LAVELLE
                                           MEGAN A. ROSSI
                                           HEATHER GEIGER
                                           655 West Broadway, Suite 1900
                                           San Diego, CA 92101
                                           Telephone: 619/231-1058
                                           619/231-7423 (fax)
                                           dand@rgrdlaw.com
                                           rachelj@rgrdlaw.com
                                           klavelle@rgrdlaw.com
                                           mrossi@rgrdlaw.com
                                           hgeiger@rgrdlaw.com

                                           Lead Counsel for Lead Plaintiff and Additional
                                           Plaintiff Ken Calderone

                                           GLANCY PRONGAY & MURRAY LLP
                                           CHARLES H. LINEHAN
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, CA 90067
                                           Telephone: 310/201-9150
                                           310/201-9160 (fax)
                                           clinehan@glancylaw.com

                                           Counsel for Additional Plaintiff Manohar K. Rao

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on February 1, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Theodore M. Hess-Mahan*
THEODORE M. HESS-MAHAN (BBO #557109)

HUTCHINGS BARSAMIAN
     MANDELCORN, LLP
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone:  781/431-2231

Email:  thess-mahan@hutchingsbarsamian.com

## DECLARATION OF SERVICE

I, Theodore M. Hess-Mahan, not a party to the within action hereby declare that on February 1, 2024, I caused to be served the foregoing document by email on the parties to the within action, addressed as follows:

**COUNSEL FOR PLAINTIFFS:**

| NAME | FIRM | EMAIL |
|---|---|---|
| Daniel S. Drosman<br>Kevin A. Lavelle<br>Megan A. Rossi<br>Rachel Jensen<br>Heather Geiger<br>Jeremy Daniels | Robbins Geller Rudman<br> & Dowd<br>655 West Broadway<br>Suite 1900<br>San Diego, CA 92101<br>Telephone:  619/231-1058<br>Fax:  619/231-7423 | dand@rgrdlaw.com<br>klavelle@rgrdlaw.com<br>mrossi@rgrdlaw.com<br>rachelj@rgrdlaw.com<br>hgeiger@rgrdlaw.com<br>jdaniels@rgrdlaw.com |
| Joe Kendall | Kendall Law Group, PLLC<br>3811 Turtle Creek Blvd.<br>Suite 1450<br>Dallas, TX 75219<br>Telephone: 214/744-3000<br>Fax:  214/744-3015 | jkendall@kendalllawgroup.com |
| Charles H. Linehan | Glancy Prongay & Murray<br>LLP<br>Century Park East<br>Suite 2100<br>Los Angeles, CA 90067<br>Telephone: 310/201-9150<br>Fax:  310/201-9160 | clinehan@glancylaw.com |
| Sammy Ford, IV | Ahmad, Zavitsanos &<br>Mensing, PLLC<br>1221 McKinney St.<br>Suite 2500<br>Houston, TX 77010<br>Telephone:  713/655-1101<br>Fax:  713-655-0062 | sford@azalaw.com |

**COUNSEL FOR DEFENDANTS:**

| NAME | FIRM | EMAIL |
|---|---|---|
| James N. Kramer<br>Alexander K. Talarides | Orrick, Herrington & Sutcliffe LLP<br>405 Howard Street<br>San Francisco, CA 94105<br>Telephone: 415/773-5700<br>Fax:  415/773-5759 | jkramer@orrick.com<br>atalarides@orrick.com |
| Claudia Wilson Frost | Orrick, Herrington & Sutcliffe LLP<br>609 Main<br>40th Floor<br>Houston, TX 77002<br>Telephone: 713/658-6400<br>Fax:  713/658-6401 | cfrost@orrick.com |
| William J. Foley | Orrick, Herrington & Sutcliffe LLP<br>51 West 52nd Street<br>New York, NY 10019<br>Telephone:  212/506-5000<br>Fax:  212/506.5151 | wfoley@orrick.com |
| Adam B. Miller<br>Sloan Renfro<br>Jennifer Cygnor | Orrick, Herrington & Sutcliffe LLP<br>2001 M Street NW<br>Suite 500<br>Washington, DC 20036<br>Telephone:  202/349-8000<br>Fax:  202-349-8080 | adam.miller@orrick.com<br>srenfro@orrick.com<br>jcygnor@orrick.com |

**COUNSEL FOR QUANTERIX CORP.:**

| NAME | FIRM | EMAIL |
|---|---|---|
| Katherine Galle | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.<br>One Financial Center,<br>Boston, MA 02111<br>Telephone: 617/348-1803 | kngalle@mintz.com |

 I declare under penalty of perjury that the foregoing is true and correct.  Executed on

February 1, 2024, at Wellesley Hills, Massachusetts.

*s/ Theodore M. Hess-Mahan*
_____
THEODORE M. HESS-MAHAN
