UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOHAMMAD BOZORGI, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CASSAVA SCIENCES, INC., et al.,<br><br>Defendants. | No. 1:24-mc-91041<br><br>CLASS ACTION<br><br>REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL<br>**[Leave to File Granted on March 14, 2024]** |

Lead Plaintiff Mohammad Bozorgi and additional plaintiffs Ken Calderone and Manohar Rao (collectively, "Plaintiffs") respectfully submit this short reply to Quanterix Corporation's ("Quanterix") Opposition to Plaintiffs' Motion to Compel the Production of Documents.

***First***, Quanterix incorrectly asserts that Plaintiffs failed to demonstrate the relevance of the 68 documents at issue. ECF 20 (the "Opp.") at 5-6. As explained in Plaintiffs' motion, these documents directly relate to Quanterix's decision to issue a corrective statement to a press release by defendant Cassava Sciences Inc. ("Cassava"). *See* ECF 2 (the "Mot.") at 2-4. Plaintiffs in the underlying securities fraud action allege that this ***very press release*** contained materially false and misleading statements regarding Quanterix. *See id*. Quanterix did not question the relevance of the other documents it produced on this same issue and provides no basis for its assertion that these 68 documents are irrelevant. After all, these documents are highly probative regarding ***why*** Quanterix issued the corrective statement and ***whether*** it viewed Cassava's press release as misleading. Not surprisingly, Quanterix concedes that the contested communications do, in fact, concern its decision to issue the corrective statement. *See* Opp. Ex. 2, ¶6. The documents are, therefore, relevant.

***Second***, Quanterix claims for the first time that the PR Consultants were consulted in order to draft a press release that would "deter[]" hypothetical investigations. Opp. at 15. But this unsupported "post hoc representation[]" is nowhere reflected in the record and thus cannot carry Quanterix's burden. *See Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*, 2018 WL 1532614, at *2 (D. Mass. Mar. 28, 2018). Three of the four PR Consultants were retained ***before*** Cassava issued its misleading press release, and ***none*** of their retention agreements makes any mention of legal advice or any litigation-related task. *See* Opp. Ex 2, ¶¶10-12, 16. Nor does Quanterix's own sworn affidavit or ***any other*** evidence cited by Quanterix mention "deterring" investigations. *See* Opp. Ex. 2. Thus, Quanterix has "simply failed to provide any contemporaneous documentation to

suggest that these communications were for the purpose of obtaining legal advice from the lawyer." *Zebra*, 2018 WL 1532614, at *3.[1]

The unavoidable conclusion that PR consultant communications are non-privileged is also bolstered by Quanterix's concession that the PR Consultants "consulted" on ordinary public relations functions "to manage media inquiries" and inform "whether and how to issue a statement." Opp. at 15; *see also id*. at 8; Opp. Ex. 2, ¶¶8-12. These communications are not privileged. *See In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y. 2019), *aff'd*, 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019) ("talking points" regarding a lawsuit, as well as statements to be made to the press, provided by a public relations consultant to in-house counsel only related to "'[m]essaging'" and were "not directed at giving or obtaining legal advice") (alteration in original). Courts have rejected the same arguments Quanterix makes here on similar facts. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *4-*5, *13 (D.N.J. July 22, 2021), *objections overruled*, 2021 WL 4272654 (D.N.J. Sept. 21, 2021) ("Valeant has failed to present any facts or descriptions as to ***how*** Vianovo assisted Covington on Valeant's behalf in providing legal services or legal advice to the Company or ***what*** was done in that regard.") (emphasis in original).

Likewise, Quanterix fails to explain why the PR Consultants were ***necessary*** for its lawyers to provide legal advice, relying instead on conclusory assertions. *See* Opp. at 15; *Zebra*, 2018 WL 1532614, at *2 (noting "the third party's participation must be 'nearly indispensable'"). This is fatal to Quanterix's privilege assertion because PR consultants are "'far from serving the kind of "translator" function served by the accountant in *Kovel*.'" *Universal Standard Inc. v. Target Corp.*,

---

[1] Under these circumstances, Quanterix's reliance on *Stardock Sys., Inc. v. Reiche*, 2018 WL 6259536 (N.D. Cal. Nov. 30, 2018), and *In Re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321 (S.D.N.Y. 2003), is inapt. Courts have largely limited *Grand Jury* and its progeny to its unique facts. *See* Mot. at 15-16. And, unlike here, those cases concern public relations firms hired by counsel to address a ***specified legal goal*** in ***already ongoing***, high profile litigation.

331 F.R.D. 80, 88 (S.D.N.Y. 2019). It is implausible on this record that any of the PR Consultants, let alone all four, were "indispensable." *See Zebra*, 2018 WL 1532614, at *2. Even if the PR Consultants were helpful, "[t]he fact that 'an attorney's ability to represent a client is ***merely improved*** by the assistance of the third party' is ***not enough to avoid the waiver*** of the privilege." Opp. at 13. There is no support for Quanterix's position that all of these communications concerned the provision of legal advice, as opposed to non-privileged public relations functions, or that their disclosure to third-party PR Consultants was strictly necessary for the provision of legal advice.

***Third***, Quanterix claims for the first time that two consultants, Heidi Creighton and Jamie Taylor, are the "functional equivalent" of employees. *Id.* at 16. Tellingly, Quanterix neither made this claim during pre-motion meet and confer sessions nor provides ***any*** support that these individuals were *de facto* Quanterix employees. Quanterix does not, for example, contend that Creighton and Taylor

> exercised independent decision-making on the company's behalf; possessed information held by no one else at the company; served as a company representative to third parties; maintained an office at the company or otherwise spent a substantial amount of time working for it; [or] sought legal advice from corporate counsel to guide his or her work for the company.

*Universal Standard*, 331 F.R.D. at 89. Rather, the Opposition confirms (and Quanterix's authority agrees) that Creighton and Taylor were retained as mere consultants. *See Zebra*, 2018 WL 1532614, at *4 (finding consultants were ***not*** the functional equivalent of employees where, like here, consultants were "paid hourly, worked from their own locations, were not obligated to work exclusively for [Quanterix], and did not act as [Quanterix]'s sole representatives with respect to the matters being negotiated"). As courts have observed: "'Businesses routinely rely on other companies to carry out important functions and services . . . . If this relationship satisfied the

functional equivalent standard, the exception could well swallow the rule.'" *Universal Standard*, 331 F.R.D. at 90-91.[2]

***Fourth***, Quanterix concedes there was no actual or threatened litigation pending at the time it engaged the PR Consultants to respond to the Cassava statement. Opp. at 17-20. It also does ***not*** dispute Plaintiffs' authority that an ***anticipated*** investigation is ***insufficient*** to trigger the work-product doctrine. *See* Mot. at 18-19. Thus, the drafts of Quanterix's press release are not work product. The Opposition also confirms that Quanterix's press release was not created "'for use ***in*** litigation,'" but was "'prepared for some [other] purpose'" (*i.e.*, to correct the public record). *See United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 61 (D. Mass. 2020) (quoting *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009)). As such, the press release is not work product. *See Wollman*, 475 F. Supp. 3d at 61. This conclusion is further compelled by the fact that work-product protection is not triggered because: (i) "the subject matter of a document relates to a subject that might conceivably be litigated" (*id.* at 61); or (ii) "the materials were prepared by lawyers or represent legal thinking." *Textron*, 577 F.3d at 29-30.

***Fifth***, Quanterix incorrectly suggests that Plaintiffs: (i) demanded that it collect and review over 60,000 documents in response to their subpoena (Opp. at 3); and (ii) reneged on agreements regarding the scope of Quanterix's privilege log. *Id*. at 4. As is apparent from Quanterix's declaration (Opp. Ex. 2, ¶19), Quanterix itself determined what an appropriate search would be and

---

[2] Quanterix's citation to *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001) is misplaced. Unlike here, that case involved a foreign corporation then involved in "high profile litigation," whose principals did not speak English well, "lacked experience in dealing with the Western media," and relied on public relations consultants "essentially, incorporated into [the foreign corporation]'s staff. *Id*. at 215, 219. And, unlike here, the consultants in that case "possessed authority to make decisions on behalf of [the foreign corporation] concerning its public relations strategy." *Id*. at 219. Similarly, *F.T.C. v. GlaxoSmithKline*, citing *In re Copper Market*, found that the consultants in that case were "'completely intertwined'" in the company there. 294 F.3d 141, 148 (D.C. Cir. 2002). Those circumstances are not present here.

undertook it – without informing Plaintiffs of the volume of documents involved or the purported burden on Quanterix. *See id*. Quanterix, indeed, **never** suggested that the scope of the subpoena should be narrowed, until now.

Nor did Plaintiffs agree that they would refrain from seeking additional information from Quanterix to substantiate its privilege claims. Once it became apparent that Quanterix was attempting to: (i) assert the attorney-client privilege over communications disclosed to third-parties; and (ii) claim work-product protection over documents created when no litigation was threatened or pending, Plaintiffs sought additional information to determine whether a waiver had occurred or if the documents were privileged in the first instance. Contrary to Quanterix's declaration (*id.*, ¶21), Plaintiffs never expressed that their privilege inquiry would be satisfied by a review of redacted retention agreements. *See* Declaration of Kevin A. Lavelle in Support of Motion for Leave to File Reply (filed herewith). Plaintiffs instead expressed concerns regarding Quanterix's privilege designations and diligently collected facts before determining that the documents were likely not privileged. *See* ECF 3, ¶¶2-3; Opp. at 4; Opp. Ex. 2, ¶21.

***Finally***, Quanterix makes a throwaway request for costs in opposing Plaintiffs' motion without any legal citation. For this reason alone, the Court should decline its request. Further, even if the Court does not grant the relief sought by Plaintiffs (which it should), costs are inappropriate where, as here, Plaintiffs' motion was brought in good faith due to their genuine dispute with Quanterix over the documents sought. *See, e.g.*, *Greenberg v. Paths Program Holding, LLC (MA)*, 2023 WL 3868318, at *4 (D. Mass. June 7, 2023) (citing authorities).

For these reasons and those stated in their motion, Plaintiffs respectfully request that the motion to compel be granted or, in the alternative, that the Court undertake an *in camera* review of a subset of the documents at issue in order to assess Quanterix's claims of privilege and work product.

DATED:  February 28, 2024	Respectfully submitted,

	ROBBINS GELLER RUDMAN
	  & DOWD LLP
	RACHEL JENSEN (admitted *pro hac vice*)
	KEVIN A. LAVELLE (admitted *pro hac vice*)


	            /s/ Kevin A. Lavelle            
	KEVIN A. LAVELLE

	655 West Broadway, Suite 1900
	San Diego, CA  92101
	Telephone:  619/231-1058
	619/231-7423 (fax)
	rachelj@rgrdlaw.com
	klavelle@rgrdlaw.com

	Lead Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

	GLANCY PRONGAY & MURRAY LLP
	CHARLES H. LINEHAN
	1925 Century Park East, Suite 2100
	Los Angeles, CA  90067
	Telephone:  310/201-9150
	310/201-9160 (fax)
	clinehan@glancylaw.com

	Counsel for Additional Plaintiff Manohar K. Rao

	HUTCHINGS BARSAMIAN
	  MANDELCORN, LLP
	THEODORE M. HESS-MAHAN (BBO #557109)
	110 Cedar Street, Suite 250
	Wellesley Hills, MA 02481
	Telephone:  781/431-2231
	thess-mahan@hutchingsbarsamian.com

	Local Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

- 6 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 14, 2024, I filed the foregoing document electronically, that the foregoing document will be served electronically to registered CM/ECF participants via the NEF, and that I will send paper copies to non-registered participants as indicated on the NEF.

*/s/ Kevin A. Lavelle*
KEVIN A. LAVELLE

ROBBINS GELLER RUDMAN
     & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  klavelle@rgrdlaw.com

4874-2488-5417.v4