UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOHAMMAD BOZORGI, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CASSAVA SCIENCES, INC., et al., <br><br> Defendants. | ) No. 1:24-mc-91041 <br> ) <br> ) CLASS ACTION <br> ) <br> ) PLAINTIFFS' OBJECTIONS TO THE <br> ) MAY 9, 2024 REPORT AND <br> ) RECOMMENDATION DENYING <br> ) PLAINTIFFS' MOTION TO COMPEL THE <br> ) PRODUCTION OF DOCUMENTS FROM <br> ) QUANTERIX CORP. <br> ) <br> ) **[REDACTED]** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND .....................................................................................................2

III. LEGAL STANDARD ..............................................................................................4

IV. ARGUMENT ...........................................................................................................5

    A. Objection 1: Quanterix Failed to Satisfy Its Burden to Prove Its Disclosures to Third-Party Consultants Did Not Waive Any Attorney-Client Privilege. .............................................................................................5

        1. Objection 1A: Quanterix Failed to Demonstrate that Each Consultant Was "Necessary" to Provide Legal Advice. ............................7

            a. Objection 1A(i): Quanterix Does Not Claim that Third-Party Consultant ████████ Was Necessary to Facilitate Legal Advice. ..................................................................9

            b. Objection 1A(ii): Quanterix Failed to Demonstrate that the Remaining Third Party Consultants Were Each Necessary to Facilitate Legal Advice. ............................................................10

        2. Objection 1B: Quanterix Does Not Claim Any Consultant Served as a "Translator" for Quanterix's Counsel. .................................................12

    B. Objection 2: The R&R Misapplied Non-Binding, out of Circuit Precedent in Invoking the *Kovel* Exception. ....................................................................13

    C. Objection 3: The Withheld Documents Are Not Work Product Because They Were Not Create for Litigation. .................................................................15

V. CONCLUSION ......................................................................................................17

4884-3137-5297.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barclays PLC v. FX Transparency, LLC*,
   2022 WL 3227534 (D. Mass. Apr. 27, 2022) ............................................................4

*Cavallaro v. United States*,
   284 F.3d 236 (1st Cir. 2002) ....................................................................6, 8, 9, 11

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
   2014 WL 7238354 (S.D.N.Y. Dec. 19, 2014) ............................................................7

*Conway v. Licata*,
   104 F. Supp. 3d 104 (D. Mass. 2015) ...............................................................10, 11

*Dahl v. Bain Cap. Partners, LLC*,
   714 F. Supp. 2d 225 (D. Mass. 2010) .......................................................5, 6, 11, 12

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010),
   *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*,
   409 F. App'x 393 (2d Cir. 2010) ............................................................................14

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   386 F. Supp. 3d 175 (D.P.R. 2019) .........................................................................16

*In re Grand Jury Subpoena*,
   220 F.R.D. 130 (D. Mass. 2004) .............................................................................17

*In re Grand Jury Subpoena dated March 24, 2003*,
   265 F. Supp. 2d 321 (S.D.N.Y. 2003) ........................................................13, 14, 15

*In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*,
   348 F.3d 16 (1st Cir. 2003) ..................................................................................5, 7

*In re Prograf Antitrust Litig.*,
   2013 WL 1868227 (D. Mass. May 3, 2013) .............................................................16

*In re Signet Jewelers Ltd. Sec. Litig.*,
   332 F.R.D. 131 (S.D.N.Y. 2019),
   *aff'd* 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019) .........................................7, 9, 14

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
   2021 WL 3140050 (D.N.J. July 22, 2021),
   *objections overruled*, 2021 WL 4272654 (D.N.J. Sept. 21, 2021) ................7, 10, 14

- ii -

Page

*Lluberes v. Uncommon Prods., LLC*,
    663 F.3d 6 (1st Cir. 2011)........................................................................................5

*Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*,
    2018 WL 1532614 (D. Mass. Mar. 28, 2018).......................................................12

*NXIVM Corp. v. O'Hara*,
    241 F.R.D. 109 (N.D.N.Y. 2007).........................................................................13

*Pearlstein v. BlackBerry Ltd.*,
    2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) ......................................................13

*Ravenell v. Avis Budget Grp., Inc.*,
    2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012) ........................................................13

*United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*,
    475 F. Supp. 3d 45 (D. Mass. 2020) ...........................................................*passim*

*United States v. Ackert*,
    169 F.3d 136 (2d Cir. 1999)..................................................................................13

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961)....................................................................................5

*United States v. Textron Inc. & Subsids.*,
    577 F.3d 21 (1st Cir. 2009)................................................................................2, 15

*Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*,
    2022 WL 18028105 (D. Mass. May 17, 2022) ...................................................5, 7

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 72(b)(3)......................................................................................................2, 5

Pursuant to Federal Rule of Civil Procedure ("Rule") 72, Plaintiffs Mohammad Bozorgi, Ken Calderone, and Manohar Rao respectfully submit the following objections to Magistrate Judge Kelley's May 9, 2024 Report & Recommendation (Doc No. 31) ("R&R") denying their motion to compel the production of certain documents from non-party Quanterix Corp. ("Quanterix").

## I.     INTRODUCTION

Plaintiffs' Motion to Compel the Production of Documents (Doc No. 1) ("Motion") seeks documents withheld by Quanterix that are central to a securities fraud class action pending in the Western District of Texas against Cassava Sciences, Inc. ("Cassava") and its senior executives ("Cassava Defendants") for misleading the market about its experimental Alzheimer's drug-candidate, simufilam.  The documents concern a short window of time in late August 2021 when scientific criticisms of simufilam became public through a "Citizen Petition" to the U.S. Food and Drug Administration.  In response, Cassava issued a misleading press release that attempted to deflect those criticisms, including onto Quanterix, causing Quanterix to issue its own press release days later correcting Cassava's misstatements.  The documents at issue concern Quanterix's response to Cassava's press release, which Quanterix continues to withhold as attorney-client privileged or work-product, despite their disclosure to four third-party business and public relations consultants for a non-litigation-related purpose – issuing a press release.

The R&R denied the Motion based primarily on a narrow exception to the waiver doctrine for disclosure to experts where "necessary" to the provision of legal advice.  *See* Doc No. 31 at 5. The R&R failed to assess, however, whether Quanterix met its burden of demonstrating each of the four consultants was, in fact, "necessary" to the provision of legal advice.  Once that requisite analysis is undertaken, it is clear the R&R erred both legally and factually because: (i) not even Quanterix contended that all four of the third-party consultants were necessary to the provision of

legal advice; and (ii) Quanterix failed to provide any explanation, much less evidence, as to how each third-party consultant was, in fact, necessary for Quanterix to receive legal advice.

Likewise, the draft press releases at issue are not protected work product because they were for public disclosure, not for use *in* litigation as is required by the First Circuit. *See United States v. Textron Inc. & Subsids.*, 577 F.3d 21, 29 (1st Cir. 2009). Further, courts in this District have held the anticipation of an investigation, standing alone, is insufficient to trigger work product protection. As the R&R did not consider either of these legal rules in its brief work-product analysis, its work-product decision also rests on an error of law.

Under Rule 72, "the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3)). In accordance with Rule 72, Plaintiffs respectfully request that the Court set aside the R&R and grant the Motion.

## II.      BACKGROUND

The underlying securities fraud action pending in the Western District of Texas alleges that the Cassava Defendants misled the market about its drug-candidate simufilam. ¶¶1-44.[1] Defendants' alleged scheme began to unravel on August 24, 2021, when the Citizen Petition became public, revealing "grave concerns about the quality and integrity of the laboratory-based studies surrounding" simufilam. ¶¶12-13. The revelations included that Cassava had removed data points from a July 2021 Alzheimer's Association International Conference ("AAIC") presentation to make the results appear more significant than they were. ¶¶218-222.

---

[1] All "¶__" and "¶¶__" references are to Plaintiffs' Consolidated Complaint for Violations of the Federal Securities Laws, filed in the underlying action on August 18, 2022. *See* Doc No. 3, Ex. B. Unless otherwise noted, emphasis is added, and internal citations are omitted throughout.

4884-3137-5297.v2

In response, the Cassava Defendants pointed the finger at others, including Quanterix.  On August 25, 2021, the day after the Citizen Petition's release, Cassava issued a press release labeling various statements from the petition as "fiction" before setting out what Cassava said were the "facts."  ¶¶14, 316-317.  Among other claims, Cassava stated it was "fiction" that the biomarker data it generated was "falsified" (¶317), but "fact" that allegedly manipulated plasma p-tau biomarker data "was generated by [Quanterix], an independent company, and presented at the recent Alzheimer's Association International Conference[]."  *Id*. (alterations in original).

As Plaintiffs allege in the underlying securities action, however, Cassava's statements were false and misleading:  Quanterix did not prepare the data Cassava presented at AAIC.  Two days later, on August 27, 2021, Quanterix issued its own press release correcting Cassava's release, asserting that it "did not interpret the test results or prepare the data charts presented by Cassava" at AAIC.  ¶¶16, 323-324.  Following Quanterix's press release, Cassava's stock price dropped 17.66% per share.  ¶¶17, 499.

The district court in Texas denied Cassava's motion to dismiss Plaintiffs' claims, upholding, among other allegations, those regarding the Cassava Defendants' false or misleading August 25 press release concerning Quanterix's role in the AAIC presentation.  Doc No. 2 ("Memorandum") at 4-5.[2]

Soon thereafter, Plaintiffs served Quanterix with a subpoena on June 15, 2023 seeking documents related to Quanterix's August 27 press release and the AAIC presentation.  *Id*. at 5.  In response, Quanterix produced certain documents and a privilege log.  Counsel for Plaintiffs and Quanterix subsequently met and conferred about Quanterix's privilege and work-product

---

[2]        An unredacted copy of the Memorandum was filed under seal pursuant to Doc No. 26.

assertions, resulting in Quanterix de-designating and producing numerous documents from its log. *Id*. at 5-8.

As part of this process, Plaintiffs learned that Quanterix continued to withhold or redact documents and communications – all of which had been ***disclosed to third-party consultants*** – that related to Cassava and Quanterix's August 27 press release.  The consultants included: (i) ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Doc No. 20, Ex. 2 (filed under seal pursuant to Doc. No. 19) ("Quanterix Declaration" or "Quanterix Decl."), ¶¶10-12, 16; Doc No. 2 at 6. When Quanterix refused to produce any of those documents, Plaintiffs moved to compel their production on February 1, 2024.  *See* Doc No. 1.

Of the 68 withheld and redacted documents at issue, 39 were withheld solely on the basis of attorney-client privilege, 22 were withheld solely on the basis of work product, and 7 were withheld on both grounds.  *See* Doc No. 3, Ex. V (filed under seal pursuant to Doc No. 26).

On May 9, 2024, Magistrate Judge Kelley issued the R&R denying Plaintiffs' Motion. These objections timely follow.

### III.    LEGAL STANDARD

A motion to compel to enforce a Rule 45 subpoena in a Circuit other than where the underlying action is pending is deemed a dispositive motion.  *Barclays PLC v. FX Transparency, LLC*, 2022 WL 3227534, at *5 (D. Mass. Apr. 27, 2022); *see also* Doc No. 31 at 2 n.1 ("Resolution of plaintiffs' motion will dispose of this miscellaneous case; therefore, the court treats it as a

dispositive motion . . . .").  Because the underlying action is pending in the Fifth Circuit, in the Western District of Texas, Rule 72(b) applies.  *See id.*

Under Rule 72(b), once objections are filed, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*  Plaintiffs respectfully request that the Court set aside the R&R under Rule 72 and grant the Motion.

## IV.    ARGUMENT

### A.    Objection 1: Quanterix Failed to Satisfy Its Burden to Prove Its Disclosures to Third-Party Consultants Did Not Waive Any Attorney-Client Privilege.

The attorney-client privilege "'protects "only those communications that are confidential and are made for the purpose of seeking or receiving legal advice."'"  *United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 63 (D. Mass. 2020) (quoting *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011)).  "When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised."  *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003).  Because the privilege is a derogation of the search for truth, courts will only apply it when the requirements are clearly met.  *See Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, 2022 WL 18028105, at *2-*3 (D. Mass. May 17, 2022).

Some courts, however, have recognized an exception to this waiver for "'third parties employed to assist a lawyer in rendering legal advice'" under the Second Circuit's decision in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961).  *See, e.g., Dahl v. Bain Cap. Partners, LLC*,

714 F. Supp. 2d 225, 227 (D. Mass. 2010) (quoting *Cavallaro v. United States*, 284 F.3d 236, 247 (1st Cir. 2002)).  However, "[t]he circumstances under which the [*Kovel*] exception applies are limited." *Id.*

"***First***, the third-party communications ***must be*** '***necessary***, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit.'" *Id.* (quoting *Cavallaro*, 284 F.3d at 247).  "'[T]he "necessity" element means more than just useful and convenient.  The involvement of the third party ***must be nearly indispensable*** or serve some specialized purpose in facilitating the attorney-client communications.'" *Cavallaro*, 284 F.3d at 249.  As such, "[t]he exception . . . does not apply to instances where an attorney's ability to represent a client is merely improved by the assistance of the third party." *Dahl,* 714 F. Supp. 2d at 227-28.

"***Second***, the exception applies ***only*** to communications in which the third party plays an ***interpretive role***.  In other words, the third party's communication must serve to translate information between the client and the attorney." *Id.* at 228.

"***Third***, the third party's communication must be made for the purpose of rendering ***legal advice***, rather than business advice." *Id.*

Here, though the R&R cited *Kovel*, it did not consider whether each of the four consultants met the three-factor test set out above.  R&R at 5-8.  Had the R&R undertaken this necessary analysis, it would have found insufficient evidence (or no evidence at all) to conclude that ***each*** of the four consultants met all three of the requirements necessary to establish the *Kovel* exception to waiver.

To avoid a waiver finding, Quanterix bore "the burden of proving not only that the attorney-client privilege and/or work product doctrines apply to the documents listed in the privilege log

- 6 -

but *also* that any privilege has not been waived."  *Woods Hole*, 2022 WL 18028105, at \*3 (citing *Grand Jury Subpoena Addressed to XYZ Corp.*, 348 F.3d at 22).  "'In discharging its burden, the proponent [of an asserted privilege] must adduce competent evidence in support of its claims.'"  *Id.* (alteration in original).  "'Where the proponent fails to adduce sufficient facts to permit the court to conclude with reasonable certainty that the privilege applies, its burden is not met.'"  *Id.*

Quanterix, however, failed to submit evidence that the *Kovel* exception applied to **each** of the four third-party consultants.  *See* Doc No. 2 at 13-17; Doc No. 23 ( "Reply") at 1-3.  This is fatal to Quanterix's privilege assertions, as disclosures to third-party PR firms ordinarily waives the privilege.  *See Wollman*, 475 F. Supp. 3d at 67 ("[T]he communication of privileged information to the PR firm waives the attorney-client privilege."); *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 137 (S.D.N.Y. 2019) ("The presence of these third parties [PR firms] on the communications acts as a waiver of the privilege."), *aff'd* 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at \*8 (D.N.J. July 22, 2021) (PR consultants not "essential to transmit communications between an attorney and a client (such as an interpreter or an accountant)."), *objections overruled*, 2021 WL 4272654 (D.N.J. Sept. 21, 2021).  Indeed, "courts have generally rejected application of the 'translator' exception in the context of outside marketing firms," which is typically applied only to actual translators or accountants with technical knowledge outside an attorney's comprehension.  *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 2014 WL 7238354, at \*2 (S.D.N.Y. Dec. 19, 2014).

### 1. Objection 1A: Quanterix Failed to Demonstrate that Each Consultant Was "Necessary" to Provide Legal Advice.

The R&R held the *Kovel* exception applied because the consultants' "expertise was sought, in this instance, by Quanterix's attorneys in furtherance" of legal goals.  Doc No. 31 at 7.  But, as

in the *Cavallaro* case, "the record does not show that [Quanterix] hired [the consultants] to assist [Quanterix attorneys] in providing legal advice." 284 F.3d at 247. "This requirement **resolves** the *Kovel* dispute because the evidence shows that [the consultants were] not employed for this purpose." *Id*. at 247-48.



. *See* Doc No. 20, Ex. 2, ¶¶10-12, 16; Doc No. 2 at 6, 12-13. Rather, according to Quanterix, each was . *See* Doc No. 20, Ex. 2, ¶10 ( ); *id*., ¶11 ( ."); *id*., ¶12 ."); *id*., ¶16 ( ).

Further, like in *Cavallaro*, three of the four consultants – . *See id*., ¶¶11-12, 16.[3]   Given this undisputed background, it was "particularly important" for Quanterix to show that **each** consultant "later acted as an agent necessary to the lawyer in providing legal advice." *Cavallaro*, 284 F.3d at 249.  Quanterix, however, failed to do so.

Nor did Quanterix provide or even reference any "'contemporaneous documentation to suggest that,'" at the time Quanterix was responding to Cassava's press release, that the consultants' "'professional relationship with [Quanterix] changed in a way that would trigger a

---

[3]     Quanterix retained the fourth consultant, . *Id.*, ¶10.

privilege.'" *Id.* at 248 (quoting the district court).  As in *Signet Jewelers*, "[t]he PR firms here were not called upon to perform a specific litigation task that the attorneys needed to accomplish in order to advance their litigation goals." 332 F.R.D. at 136.  Quanterix thus waived the attorney-client privilege, and the R&R erred in ruling otherwise.

<blockquote>

a.     **Objection 1A(i): Quanterix Does Not Claim that Third-Party Consultant ████████ Was Necessary to Facilitate Legal Advice.**

</blockquote>

The R&R's holding that the *Kovel* exception applies across all four consultants is based on its error that "media expertise was necessary to assess the risks and liabilities associated with how to respond publicly" and "integral to the attorneys' provision of effective legal advice."  Doc No. 31 at 7.  ████████████████████████████████████████ ████████████████████████████████████████ *See* Doc No. 20, Ex. 2, ¶8 (████████████████████████████).

Further, ████████████████████████████████ and thus did not have the requisite expertise to provide communications advice.  *See id.*, ¶16 ██████ ████████████████████████").  The communications disclosed to ██████, therefore, do not and cannot fit within the *Kovel* exception by Quanterix's own admission, and any privilege has been waived as to those communications.  *See* Doc No. 3, Ex. V at 16, 19 (entries ML_REV_Quanterix0000001338, 1337 redacted for attorney client privilege, but disclosed to ██████, among other third-party consultants).  The R&R thus erred in denying the Motion as to the ██████ communications.

**b.      Objection 1A(ii): Quanterix Failed to Demonstrate that the Remaining Third Party Consultants Were Each Necessary to Facilitate Legal Advice.**

Quanterix claimed that the other three consultants, ███████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████. Doc No. 20, Ex. 2, ¶8.  But Quanterix offered

*no explanation* – and the R&R stated none – regarding *how* any of the consultants, let alone each

of them, were necessary to the provision of legal advice.  *See* Doc No. 31 at 7 (noting only that

"media expertise was necessary to assess the risks and liabilities associated with how to respond

publicly"); *see generally*; Doc No. 20, Ex. 2.

It is well established that conclusory statements such as those here are insufficient to carry

the burden of proof to show consultants are necessary to the provision of legal advice.  *See Valeant*,

2021 WL 3140050, at *4-*5, *13 ("Valeant has failed to present any facts or descriptions as to

*how* Vianovo assisted Covington on Valeant's behalf in providing legal services or legal advice to

the Company or *what* was done in that regard.") (emphasis in original).  Indeed, such statements

are tantamount to no evidence at all.  *See Conway v. Licata*, 104 F. Supp. 3d 104, 125 (D. Mass.

2015) (affidavit stating that third party "assisted" in conversations with counsel without explaining

"how" was not evidence that consultant was necessary and thus not sufficient to avoid waiver).

Here, the Quanterix Declaration is insufficient under *Kovel*.  In fact, it states only that ███

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████ Doc No. 20, Ex. 2, ¶¶8, 13.  But "assisting" counsel is insufficient under

*Kovel. See Conway*, 104 F. Supp. 3d at 125; *Dahl*, 714 F. Supp. 2d at 229 ("JP Morgan's review of legal documents and legal advice to provide 'feedback' is not enough to show that JP Morgan was necessary, or at least highly useful, in facilitating the legal advice."); *Cavallaro*, 284 F.3d at 246-47 (double-checking legal advice is not enough to show accountant's role is necessary). Indeed, courts have repeatedly held that "an attorney's ability to represent a client is merely improved by the assistance of the third party" is ***not enough*** to avoid waiver. *See Dahl*, 714 F. Supp. 2d at 227-28; *Wollman*, 475 F. Supp. 3d at 66 (same).

Moreover, . *See* Doc No. 20, Ex. 2, ¶6 , therefore, cannot have been "necessary" in . *Id.*, ¶3.

Like the First Circuit in *Cavallaro*, the Court should be skeptical of Quanterix's unsubstantiated claim .

Doc No. 31 at 7; *Cavallaro*, 284 F.3d at 249 ("We are skeptical of the Cavallaros' claim that Ernst & Young was present to assist attorney Hamel of Hale and Dorr, who was a senior partner of over twenty years' experience, and a specialist in trusts and estates, including, necessarily, consequent tax advice.").

Here, Quanterix had the benefit of able outside counsel with decades of experience, including handling circumstances like the one Quanterix faced in this case. *See* Doc No. 20, Ex. 2,

¶ 1 ("█████████████████████████████████████

████████████████████████████████████████

████████████████████████.").  It is therefore improbable that any of the consultants were "necessary" to the provision of legal advice on this record, let alone all of them.

Because the R&R did not consider whether ***each*** of the four consultants were necessary to provide legal advice to Quanterix, and Quanterix failed to provide evidence to meet its burden, the R&R should be set aside.  After all, Quanterix's "post hoc representations that, at the time these communications occurred, its employees and attorneys intended for the conversations to be privileged" are not sufficient.  *See Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*, 2018 WL 1532614, at *3 (D. Mass. Mar. 28, 2018).  Because Quanterix waived attorney-client privilege upon disclosure of those communications to the four outside consultants, the communications are discoverable and production should be compelled.

## 2.     Objection 1B: Quanterix Does Not Claim Any Consultant Served as a "Translator" for Quanterix's Counsel.

The R&R also failed to assess the second prong of the *Kovel* analysis.  If it had done so, it would have found no evidence that any of the four consultants served as a "translator" for Quanterix's attorneys as required under *Kovel*.  *See Dahl*, 714 F. Supp. 2d at 228 ("[T]he third party's communication must serve to translate information between the client and the attorney.");  *Lynx Sys.*, 2018 WL 1532614, at *4 ("[T]hird parties must do more than merely offer their advice and perspective, rather they must interpret or translate matters that are beyond the lawyer's reach or competence and would otherwise interfere with the attorney-client communications.").

Following its holding in *Kovel*, the Second Circuit clarified that "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely

- 12 -

because the communication proves important to the attorney's ability to represent the client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). Rather, in *Ackert*, the Second Circuit held that the "principle" in *Kovel* had "**no application**" where the attorney "was **not** relying on [the third party] **to translate or interpret information** given to [the attorney] by his client." *Id*. And "[b]ecause [the third-party's] role was not as a translator or interpreter of client communications, the principle of *Kovel*" did **not** shield the discussions. *Id*. at 140.

Here, Quanterix likewise **does not contend** that any of the consultants served as a translator of information for its attorneys (nor could it); therefore, its communications with those third-party consultants cannot be shielded from waiver by the *Kovel* exception.

### B.     Objection 2: The R&R Misapplied Non-Binding, out of Circuit Precedent in Invoking the *Kovel* Exception.

The R&R states that "[t]his case falls into the narrow category of cases outlined by *In re Grand Jury Subpoena dated March 24, 2003*, 265 F. Supp. 2d 321, 323-24 (S.D.N.Y. 2003), in which the PR firm's target audience was not the public at large, but rather prosecutors and regulators responsible for charging decisions in the investigations concerning the 'Target.'" Doc No. 31 at 8 n.5. The out-of-Circuit district court decision in *In re Grand Jury*, however, is a "deviation from the narrowly tailored test of *Kovel* and *Ackert*" noted above. *See NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 141 (N.D.N.Y. 2007). Courts have, therefore, limited *In re Grand Jury*, which diverges from its home-circuit precedent of *Kovel* and *Ackert* to the unique facts of that case.[4] Despite recognizing that the facts here are distinct from *In re Grand Jury*, the R&R

---

[4]     *See Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *6 (S.D.N.Y. Mar. 19, 2019) ("*In re Grand Jury Subpoenas Dated March 24, 2003* is narrowly construed.") (collecting cases); *id*. ("'The reach of [*In re Grand Jury Subpoenas Dated March 24, 2003* is] limited by its context . . . .'") (alteration in original) (quoting *Ravenell v. Avis Budget Grp., Inc.*, 2012 WL 1150450, at *3 (E.D.N.Y. Apr. 5, 2012)); *id*. ("interpreting *In re Grand Jury Subpoenas Dated March 24, 2003* as having a 'very narrow holding' and applicable only in 'cases such as . . . high

- 13 -

nevertheless relied on that non-binding decision.  *See* Doc No. 31 at 8 n.5. (stating "the procedural posture and other unique details differ here").  The R&R erred in relying on *In re Grand Jury* for this reason alone.

The R&R also overlooks another fundamental difference between *In re Grand Jury* and the circumstances here that render it inapplicable.  In *In re Grand Jury*, **one** PR firm was retained by the lawyers for a target in a criminal investigation **for a specific legal purpose**: to "alter" the mix of public information to "creat[e] a climate in which prosecutors and regulators might feel freer to act in ways less antagonistic to Target than otherwise might have been the case."  265 F. Supp. 2d at 326.  And, in that case, there was "**no reason** to question the stated rationale for her lawyers' hiring of [the PR firm]."  *Id.*

Here, by contrast, **none** of the **four** third-party consultants was hired to "'reduce the risk that prosecutors and regulators would feel pressure from the constant anti-Target drumbeat in the media to bring charges'" (*id.* at 323) or for any other legal purpose.  Indeed, as noted above, ████

████████████████████████████████████████████████████████████████

████████████████████████████████████     *See* §IV.A.1., *supra*.  Instead, the Quanterix Declaration says the third-party consultants were ████████████████████████████.  *See id*.

Further, here, unlike in *In re Grand Jury*, **no** "**witness claims** that 'a significant aspect' of [the PR firm's] 'assignment that distinguished it from standard public relations work was that [its]

---

profile grand jury investigation[s]'") (ellipsis in original) (quoting *In re Chevron Corp.*, 749 F. Supp. 2d 170, 184 n.64 (S.D.N.Y. 2010), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010)); *Valeant*, 2021 WL 3140050, at *10-*11 (calling opinion "fundamentally restricted"); *Signet Jewelers*, 332 F.R.D. at 135 n.3 (caselaw describes "narrow" ruling of *In re Grand Jury*).

target audience was not the public at large,'" but rather "'the prosecutors and regulators responsible for charging decisions.'"  265 F. Supp. 2d at 323-24.  Quanterix's own Declaration concedes through its silence that the four consultants ██████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████.  *See generally* Doc No. 20, Ex. 2.  There is, thus, no evidence suggesting that *In re Grand Jury* is applicable here.  If left undisturbed, the R&R would vastly – and improperly – expand the scope of a largely marginalized and non-binding out-of-circuit decision.  The Court should set aside R&R insofar as it relies on *In re Grand Jury* in this case.

      **C.**      **Objection 3: The Withheld Documents Are Not Work Product Because They Were Not Create for Litigation.**

The R&R also erred in finding that certain of the withheld documents were protected work product.  It is well established that "[t]he First Circuit has taken a narrow view of the attorney work product doctrine."  *Wollman*, 475 F. Supp. 3d at 61.  In this Circuit, work-product protection only extends to "'materials prepared ***for use in litigation***,'" meaning that the document must not be "'prepared for some purpose other than litigation.'"  *Id.* (quoting *Textron*, 577 F.3d at 29).  Work product protection is not triggered, for example, simply because "the ***subject matter*** of a document relates to a subject that might conceivably be litigated."  *Textron*, 577 F.3d at 29 (emphasis in original).  Thus, materials prepared for "'other nonlitigation purposes are ***not***'" work-product protected ***even if*** they "were prepared by lawyers or represent legal thinking."  *Id.* at 29-30.

The R&R erred as a matter of law in failing to apply the rule in *Textron*.  *See* Doc No. 31 at 9.  There is no dispute that the documents at issue are, or concern, drafts of Quanterix's August 27 press release intended for public consumption ██████████████████████.  None of these documents is for use ***in*** litigation.  *See, e.g.,* Doc No. 3, Ex. V at 2 (entries ML_REV_Quanterix0000001314.0001,  1319.0001); Doc No. 20, Ex. 2, ¶6 (referring to

- 15 -

Quanterix's August 27 statement as ██████████████████).  Indeed, at the time Quanterix

made the decision to respond to Cassava and issue its own press release, there was no threatened

or actual litigation pending against Quanterix.  *See* Doc No. 2 at 6-7.  Thus, Quanterix has not

"established that the [the press releases were] prepared for *use* in possible litigation."  *Wollman*,

475 F. Supp. 3d at 62 (emphasis in original).  "The absence of this fact precludes a finding that the

[press releases are] protected as attorney work product."  *Id.*; *In re Fin. Oversight & Mgmt. Bd. for

P.R.*, 386 F. Supp. 3d 175, 187 (D.P.R. 2019) (The mere expectation of litigation is *insufficient*

by itself to establish work product protection, as "documents that were not prepared for use *in*

litigation are *not* protected.").  Indeed, courts have rejected similar claims of work product

protection where the materials were generated for the media or the public, not for use in litigation

itself.  *See, e.g.*, *In re Prograf Antitrust Litig.*, 2013 WL 1868227, at *3 (D. Mass. May 3, 2013)

("[D]ocuments bearing upon potential litigation over the citizen petition" "fall *outside* the scope

of work-product protection, which is intended 'to provide a zone of privacy for strategizing about

the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's

customers, the media, or on the public generally.'").[5]

     Adding to its error, the R&R fails to address whether Quanterix's self-serving statement

that the documents were prepared in anticipation of litigation was "'objectively reasonable.'"

*Wollman,* 475 F. Supp. 3d at 61-62.  Indeed, Quanterix is unable to make that showing because:

(i) there was no actual or threatened litigation at the time Quanterix began working with the

consultants to respond to Cassava's August 25 statement (Doc. No. 2 at 6-7); and (ii) as set forth

---

[5]    Further, Plaintiffs have no objection to Quanterix redacting any imbedded attorney
comments reflecting actual opinion work product, to the extent any such opinion work product
exists.

in the Quanterix Declaration, ███████████████████████████████████████████████

████████████████████████████████. *See* Doc No. 20, Ex. 2, ¶4 ("██████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████").

    At most, Quanterix anticipated, according to the Quanterix Declaration, ████████████

███████████████████████████████████ *Id*.  But, as courts in this District have

found, "an anticipated [government agency] investigation ***would not count***" for purposes of

determining if materials were created in anticipation of litigation.  *In re Grand Jury Subpoena*,

220 F.R.D. 130, 157 (D. Mass. 2004).  Thus, the fact that Quanterix ██████████████████

████████████████████████████████████████████████████████████████████████████████,

is not sufficient to demonstrate the withheld materials were created in "anticipation of" litigation.

Accordingly, the documents at issue are not protected work product, and the R&R erred in ruling

otherwise.

## V.    CONCLUSION

    For the foregoing reasons, the Court should set aside the R&R and grant Plaintiffs' Motion

to compel the production of documents at issue from Quanterix.

  DATED:  May 23, 2024            ROBBINS GELLER RUDMAN
                                 & DOWD LLP
                               RACHEL JENSEN (admitted *pro hac vice*)
                               KEVIN A. LAVELLE (admitted *pro hac vice*)

                               */s/ Kevin A. Lavelle*
                               KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
rachelj@rgrdlaw.com
klavelle@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao

HUTCHINGS BARSAMIAN
   MANDELCORN, LLP
THEODORE M. HESS-MAHAN (BBO
#557109)
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone:  781/431-2231
thess-mahan@hutchingsbarsamian.com

Local Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

- 18 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 23, 2024, I filed the foregoing

document electronically, that the foregoing document will be served electronically to registered

CM/ECF participants via the NEF, and that I will send paper copies to non-registered participants

as indicated on the NEF.

*/s/ Kevin A. Lavelle*
KEVIN A. LAVELLE

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  klavelle@rgrdlaw.com

4884-3137-5297.v2